110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re SOVEREIGN PARTNERS, Debtor.
SOVEREIGN PARTNERS, Plaintiff-Appellant,
v.
Dorin LASCU, Defendant,
and
Circle J Corporation, Defendant-Appellee.
 No. 95-15804.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 14, 1996.
Decided April 04, 1997.
 
 1
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Sovereign Partners ("Sovereign") appeals a judgment of the district court affirming a bankruptcy court judgment entered against it in favor of respondent Circle J Corporation ("Circle J") after a bankruptcy court trial. We affirm.
 
 FACTS
 
 4
 This case arises out of a failed project to construct a hotel facility intended for visiting Air Force personnel at the Nellis Air Force Base in Las Vegas, Nevada. On November 20, 1989, the United States Air Force granted to Dorin Lascu ("Lascu") a 40-year "ground lease" ("the Lease") at Nellis Air Force Base for the limited purpose of constructing such a hotel facility. Appellant's Excerpts of Record ("E.R.") Vol. II, Exh. C. Under the terms of the Lease, Lascu had to obtain financing acceptable to the Air Force, and the Lease was subject to termination by the Air Force if a written commitment was not obtained from a banking corporation or other recognized financial institution acceptable to the government. Id. at 13. The Lease also provided that Lascu could not transfer or assign the Lease without the Air Force's consent. Id. at 36-37. Lascu subsequently assigned the Lease to Omni Development, Inc. ("Omni"), a corporation wholly-owned by Lascu, with the Air Force's consent.
 
 
 5
 Lascu initially entered into an agreement with Joseph and John Kealy to develop the hotel. E.R. Vol. X, exh. 13 at II 73-74. The Kealys supervised design and bid solicitation for the hotel and attempted to secure financing for the project. Id. at II 83.
 
 
 6
 In November 1990, Lascu also attempted to secure financing for the project. To that end, Lascu met with Ranbir Sahni ("Sahni") and, on November 15, 1990, entered into a pre-partnership agreement with Sanhi to form Sovereign Partners ("Sovereign"), a limited partnership. E.R. Vol. II, exh. B. Sovereign Corporation was designated as a general partner of the limited partnership, while Sahni was originally designated as a limited partner. Id. at 2. The agreement provided that Omni and Sahni would use Sovereign as the vehicle to develop and complete the project and required Sanhi to obtain a written commitment for financing. Id. at 4-5. However, the agreement also provided that if Sovereign could not obtain financing, Lascu was free to seek third-party financing. Id. at 7. While Sovereign made numerous financing proposals to the Air Force, none of the proposals was accepted. In accordance with the terms of the pre-partnership agreement between Lascu and Sanhi, Lascu sought sources for financing from outside parties.
 
 
 7
 In December of 1991, Lascu arranged for financing from Sierra West Equities, Inc. ("Sierra"), through the Investment Bankers of Legg, Mason, Walter and Wood. The Air Force deemed this arrangement to be acceptable. To develop the project, Omni, Sierra, Lascu, and various other entities formed the Wings Hotel Limited Partnership ("Wings"). E.R. Vol. II, exh. Z. After a meeting on December 17, 1991, Omni assigned the Lease to Wings, and on January 24, 1992, the Air Force formally consented to the assignment.
 
 
 8
 In December of 1991, Wings asked the Kealys and Joseph Zerbib to become involved in the project. E.R. Vol. X, exh. 13 at II-88. Wings informed them that Sovereign was no longer involved in the project and that Lascu had again switched partners. Id. at II-95. The Kealys and Zerbib formed Circle J Corporation ("Circle J") to further their end of developing the project.
 
 
 9
 Circle J's responsibilities included design supervision and construction management. Id. at II-92. They were not to be involved in other areas of managing the partnership, including financing and handling legal matters. Id. at II-97. Originally, Wings and Circle J agreed that Circle J was to receive a fee as compensation. Id. at II-91. However, it later agreed to receive a limited partnership in Wings as compensation. Id. at II-94-94.
 
 
 10
 Shortly thereafter, Sovereign instituted an action in California Superior Court to restrain Omni from going forward with the financing arrangements. The court denied Sovereign's motion for a preliminary injunction to prevent Omni from going ahead with the project.
 
 
 11
 Having lost its legal battle in California Superior court, Sovereign filed a petition under Chapter 11 in the Bankruptcy Court on February 29, 1992. In its schedules, Sovereign claimed that it was the owner of the Lease and claimed the Lease as an asset of the estate. Sovereign then filed an adversary proceeding in the Bankruptcy Court against Omni and other defendants, asserting five causes of action: (1) to quiet title; (2) for declaratory relief; (3) for breach of fiduciary duty; (4) for a constructive trust and accounting; and (5) for intentional interference with prospective business advantage.
 
 
 12
 Sovereign filed a motion for a preliminary injunction, and after a hearing, United States Bankruptcy Judge R. Clive Jones found that Sovereign did not have a property interest in the Lease. Accordingly, Judge Jones denied Sovereign's causes of action for quiet title and for declaratory relief and entered judgment against Sovereign on June 8, 1992.
 
 
 13
 Subsequently, the district court withdrew reference of the adversary proceeding, and Sovereign filed a motion for summary judgment or, alternatively, for reconsideration of Judge Jones' ruling in district court. Judge George of the district court denied these motions and dismissed as moot Sovereign's causes of action for quiet title and declaratory relief on the grounds that Sovereign had no interest in the Lease. The Ninth Circuit affirmed.
 
 
 14
 After the entry of the district court's order, the attorney representing the defendants withdrew. Only Circle J retained new counsel. Consequently, the district court entered a default judgment against the other defendants--Omni Development Corp., Wings Hotel Limited Partnership, Dorin Lascu, Kurt Davis, and W.G.I., Inc. (collectively, the "Wings Defendants")--and referred the case to back to bankruptcy court for disposition of the remaining issues. E.R. Vol. X, exhs. 7 & 8.
 
 
 15
 Prior to trial, Sovereign abandoned its fourth claim for constructive trust and an accounting. The bankruptcy court tried the remaining claims--breach of fiduciary duty and intentional interference with prospective business relations--from March 30 through April 4, 1994. At the close of Sovereign's case, Circle J made a motion to dismiss, which was denied. At the end of the trial, the court ruled in favor of Circle J, and a judgment was entered on May 27, 1994. Sovereign appealed that ruling to the district court, which affirmed on March 23, 1995. Sovereign now appeals the district court's decision.
 
 DISCUSSION
 A. STANDARD OF REVIEW
 
 16
 The role of the district court and this court are essentially the same in the bankruptcy appellate process. Like the district court, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Dak Industries, Inc., 66 F.3d 1091, 1094 (9th Cir.1995). A district court's ruling on the availability of res judicata is reviewed de novo. Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.1988).
 
 
 17
 B. EFFECT OF BANKRUPTCY COURT'S DENIAL OF CIRCLE J'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 52(c)
 
 
 18
 Sovereign argues that the bankruptcy court's ruling denying Circle J's motion to dismiss under Fed.R.Civ.P. 52(c) at the close of Sovereign's case indicates that the judge concluded that it had established a prima facie case, and therefore the judge was in error in subsequently finding that Sovereign had failed to establish elements of its case. Sovereign seriously misunderstands the significance of a court's denial of a motion to dismiss.
 
 
 19
 Federal Rule of Civil Procedure 52(c), made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 7052, provides:
 
 
 20
 If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any such judgment until the close of all the evidence....
 
 
 21
 Fed.R.Civ.P. 52(c) (emphasis added).
 
 
 22
 The plain language of the rule clearly indicates that the granting of a motion to dismiss before the close of the evidence is discretionary. See Reigel Fiber Corp. v. Anderson Gin Company, 512 F.2d 784, 793 n. 19 (5th Cir.1975). As the advisory committee notes to the 1991 amendment to the rules make clear, under Rule 52(c), "the court retains discretion to enter no judgment prior to the close of the evidence." See 134 F.R.D. 525, 690 (1991). Accordingly, a leading commentator has remarked that under Rule 52(c), a trial court may simply "prefer to reserve judgment until all the evidence is in." Wright & Miller, Federal Practice and Procedure: Civil 2d § 2573.1 at 495 (1995). The Seventh Circuit has agreed with this view, concluding that a court's decision to deny a Rule 52(c) motion does not preclude the court from later dismissing the nonmovant's case:
 
 
 23
 [A] denial of defendant's motion [to dismiss] amounts to nothing more than a refusal to enter judgment at that time. At most it constitute[s] a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it [does] not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling.
 
 
 24
 Armour Research Foundation of Illinois Institute of Technology v. Chicago, Rock Island & Pacific Railroad Company, 311 F.2d 493, 494 (7th Cir.), cert. denied, 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 129 (1963) (concerning former Rule 41(b), the precursor to present Rule 52(c)).[1]
 
 
 25
 Sovereign's argument that the bankruptcy court's denial of Circle J's Rule 52(c) motion at the close of Sovereign's case establishes as a matter of law that it made out a prima facie case misses the point. Even if Sovereign had established a prima facie case, it simply does not follow that it was entitled to judgment as a matter of law. There is a significant difference between making a prima facie case to avoid dismissal and meeting the applicable burden of proof, which is the preponderance of evidence standard. See Johnson v. United States Postal Service, 756 F.2d 1461, 1464 (9th Cir.1985). Even if Sovereign had established a prima facie case, the judge may have weighed all of the evidence at the close of the case and determined that Sovereign had not met its burden of proof by a preponderance of the evidence.
 
 
 26
 Furthermore, contrary to Sovereign's assertions, Circle J did not leave Sovereign's evidence uncontroverted. Rather, after the bankruptcy court denied Circle J's Rule 52(c) motion, Circle J offered the testimony of Circle J's principal, Joseph Kealy, as well certain deposition testimony, which refuted Sovereign's version of the case. E.R. Vol X, exh. 13 at II-71 to II-152. Accordingly, we find that the district court correctly ruled that the bankruptcy court's denial of Sovereign's Rule 52(c) motion did not preclude its decision against Sovereign at the close of all the evidence.
 
 
 27
 C. THE PRIOR DEFAULT JUDGMENT ENTERED AGAINST THE OTHER DEFENDANTS DID NOT BIND CIRCLE J UNDER THE DOCTRINES OF RES JUDICATA OR CLAIM PRECLUSION
 
 
 28
 Sovereign argues that Circle J is bound by the default judgment entered by the district court against Wings and that Circle J should have been precluded from litigating both matters raised and matters that could have been raised in the litigation that resulted in the default. According to Sovereign, the doctrine of res judicata or claim preclusion applies to require this result.[2] See Appellant's Opening Brief, at 13.
 
 
 29
 The doctrine of claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' " Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.1988) (quoting Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535 (5th Cir.1978)). Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Id. at 322 (quoting Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)). Generally, a prior decision is preclusive if (1) there is a final judgment by a court of competent jurisdiction; (2) the same cause of action is involved; and (3) the parties are the same or are in privity with those covered by the judgment. See Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir.1985). The issue in this case is whether Circle J can be barred by the default judgments entered against the Wings Defendants as a party in privity with them.
 
 
 30
 Under the doctrine of privity, "[o]ne who is not a party of record may be bound if he had a sufficient interest and participated in the prior action." United States v. ITT Rayonier, Incorporated, 627 F.2d 996, 1003 (9th Cir.1980). In Chicago, R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 621, 46 S.Ct. 420, 424, 70 L.Ed. 757 (1926), the United States Supreme Court characterized the privity relationship as one of "substantial identity" between parties. The privity issue requires a close factual examination of the relationships of the parties and a determination concerning the appropriateness of preclusion in light of those relationships. After examining the relationship between Circle J and the Wings defendants, we find that Circle J was not in privity with the Wings Defendants and that the default judgments against the Wings Defendants were therefore not binding on Circle J.
 
 
 31
 In general, a limited partner is not in privity with the partnership. Ames v. Uranus, 1993 U.S.Dist. LEXIS 10850, at * 23-24, 1993 WL 299241 at * 6 (D.Kan); see also United States v. Blumenfeld, 128 B.R. 918, 925 (E.D.Pa.1991) (claim against general partners of limited partnership in their individual capacities not precluded by claim against partnership); Restatement (Second) of Judgments § 60, comment b (1982) ("[w]hen a judgment is rendered against a partnership having a limited partner, it binds the limited partner so far as his investment is concerned, but not otherwise.").
 
 
 32
 Sovereign claims that Circle J must be bound by the default judgment because Circle J had a financial interest in the outcome of the litigation and asserted control over the previous litigation. A nonparty may bound by a judgment when it assumes "control over litigation in which [it had] a direct financial or proprietary interest and then seek[s] to redetermine issues previously resolved." Montana v. United States, 440 U.S. 147, 154 (1979). We find that Circle J did not have the requisite control over the previous litigation for it to be bound by the default judgments.
 
 
 33
 The only evidence offered by Sovereign to support its contention that Circle J controlled the earlier litigation was the fact that Circle J helped pay for the Wings Defendant's legal fees and the fact that Circle J and the Wings Defendants retained the same counsel. See E.R. Vol. IX, exh. C. This is simply insufficient to show the level of control required by law to find that Circle J was in privity with the other defendants. As the Fourth Circuit has noted, to be in privity one must do much more than merely pay another party's legal fees:
 
 
 34
 To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain [appellate] review.... It is not sufficient, however, that the person merely contributed funds or advice in support of the party, supplied counsel to the party, or appeared as amicus curaie.
 
 
 35
 Virginia Hospital Association v. Baliles, 830 F.2d 1308, 1312 (4th Cir.1987) (emphasis added) (citing Restatement (Second) of Judgments § 39 comment c (1982)); see also Benson and Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1174 (5th Cir.1987) (nonparty supplying counsel to party in litigation insufficient to establish privity for purposes of claim preclusion).
 
 
 36
 There is no evidence in the record that counsel in the first action was directly responsible to Circle J and that Circle J had an effective choice as to the legal theories and proof advanced in the previous suit. In fact, the record clearly shows that Circle J had no such control. See E.R. Vol. X, exh. 13 at II-97 (Joseph Kealy's testimony that Circle J did not participate in managing the litigation and was "kept out of the legal goings on of the partnership totally").
 
 
 37
 Sovereign argues that the district court did find that Circle J was in privity with the Wings Defendants as a limited partner to the default judgment and therefore erroneously concluded that claim preclusion did not apply. However, Sovereign misconstrues the court's findings. In finding that Circle J was "in privity" with the Wings Defendants, the court simply found that Circle J, in its capacity as a limited partner of Wings, could not collaterally attack the judgment against Wings--i.e., that Circle J was bound by the judgment against the Wings partnership of which it was a part.[3] The court did not find--and nor should it have found--that Circle J, simply because it was a limited partner of Wings, was also bound by the default judgment against the Wings Defendants in its capacity as a separate entity. It is well settled that a party appearing in an action in one capacity, individual or representative, is not thereby bound by res judicata in a subsequent action in which he or she appears in a different capacity. Restatement (Second) of Judgments, § 36 (1982). See also, Montana, 440 U.S. at 154, 99 S.Ct. at 974 (same); Conte v. Justice, 996 F.2d 1398, 1403 (2d Cir.1993) (same); Akin v. Pafec Limited, 991 F.2d 1550, 1559 (11th Cir.1993) (same). In the present action, Sovereign did not assert liability against Circle J in its role as a limited partner of Wings; rather it asserted liability against Circle J only in its individual capacity.[4] As a result, the prior default judgment against the Wings Defendants was not binding on Circle J in this case.
 
 
 38
 Accordingly, we affirm the district court's ruling refusing to apply the doctrine of res judicata or claim preclusion to Circle J.
 
 
 39
 D. SOVEREIGN'S ASSISTING IN A BREACH OF FIDUCIARY DUTY CLAIM
 
 
 40
 To establish the tort of assisting in the violation of a fiduciary duty, a plaintiff must prove: (1) that there was a breach of a fiduciary duty; (2) that the defendant knowingly induced or participated in the breach; (3) that the plaintiff suffered damages that were proximately caused by the defendant's conduct. Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir.1986); see also Donovan v. Schmoutey, 592 F.Supp. 1361, 1396 (D.Nev.1984); Restatement (Second) of Torts, § 876 (1979); Restatement (Second) of Torts, § 874, comment c (1979).
 
 
 41
 Sovereign contends that the Circle J knew of Sovereign's interest in developing the hotel facility and knew of Lascu's and Omni's fiduciary duties to Sovereign. According to Sovereign, Circle J assisted Lascu and Omni in breaching these duties to Sovereign by providing capital to Wings, including the payment of attorney's fees, in order to assist Wings in its preparation for anticipated litigation against Sovereign.
 
 
 42
 The bankruptcy court rejected this claim, finding that Circle J was not involved in the management of the Wings Partnership and that Circle J was not privy to knowledge about the litigation with Sovereign. E.R. Vol. XI, exh. 17 at p 16. The district court affirmed this finding. In re Sovereign Partners, 179 B.R. 656, 663 (D.Nevada 1995).
 
 
 43
 We also affirm. There is nothing in the record to indicate that Circle J had any control over the use of the money it provided to Wings. As the district court noted, such a showing is necessary to establish a knowing inducement or assistance in the breach of a fiduciary duty. See Whitney, 782 F.2d at 1115. Moreover, Joseph Kealy testified that he was involved with Lascu in the development in the project for approximately a year before Sovereign was ever involved. See E.R. Vol. X, exh. 13 at II-73-82. He also testified that after a short respite, he was brought back into the project by Lascu and was told by Lascu at that time that Sovereign was no longer involved in the project. This testimony belies Sovereign's contention that Circle J knowingly assisted in a breach of fiduciary duty. In light of this record, we cannot conclude that the district court's findings were clearly erroneous.
 
 
 44
 Moreover, the bankruptcy court's finding that Sovereign failed to prove damages was likewise not clearly erroneous. The only evidence proffered regarding damages was a cash flow projection prepared for the solicitation of financing by Sovereign. E.R. Vol. X, exh. 11 at 27-28. Mr. Graham, the Vice President of Sovereign was allowed to give his opinion of the income stream that Sovereign would have enjoyed if it had the project. Id. However, the court found that such projections were speculative and that there was no testimony that such projections could have been realized. Furthermore, there was substantial evidence in the record to support the court's conclusions that the reason Sovereign did not realize any such cash flow from the project was because it failed in its own attempts to secure financing. E.R. Vol. X, exh. 11 at I-10-11; I-12-13; I-20-21; and I-36. In light of the present record, we cannot conclude that the district court was clearly erroneous in finding that Sovereign failed to prove the damages element of its breach of fiduciary duty claim. Accordingly, the district court did not err in finding for Circle J on this claim.
 
 
 45
 E. SOVEREIGN'S INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE CLAIM
 
 
 46
 Sovereign also alleges that Circle J interfered with Sovereign's prospective business advantage because it knew that Sovereign was the assignee of the lease but nonetheless entered into a partnership for the purpose of development of the same project in a manner to exclude Sovereign. The elements of the tort of intentional interference with prospective business advantage require a plaintiff to show:
 
 
 47
 (1) a prospective contractual relationship between it and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct.
 
 
 48
 Leavitt v. Leisure Sports, Inc., 734 P.2d 1221, 1225 (Nev.1987), (citing Buckaloo v. Johnson, 537 P.2d 865, 872 (Cal.1975)).
 
 
 49
 Sovereign failed to prove that Circle J intentionally interfered with Sovereign's prospective business relationship. As the district court noted, at trial Sovereign's Vice President, Robert Graham, testified: (1) that Sovereign could not obtain consent from the Air Force to the assignment of the Lease; (2) that it could not obtain a binding commitment letter from any lender; and (3) that it could not obtain adequate financial risk insurance as required. E.R. Vol. XI, exh. 20, at 13. This evidence demonstrates the absence of the first element required to show interference with prospective business relationship--the existence of a prospective contractual relationship.
 
 
 50
 The trial evidence also showed that when Circle J got involved with the project it believed that Sovereign was no longer involved. See E.R. Vol. X, exh. 13 at II-95. In light of this evidence, the district court was not in error finding that Circle J had no intent to harm Sovereign. Accordingly, the District Court's decision is affirmed.
 
 
 51
 Finally, there is no basis for holding Circle J vicariously liable for the acts of Wings. Nevada Revised Statute Annotated Title 7, chapter 88.430, provides that a limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or participates in the control of the business. The trial testimony of Joseph Kealy established that Circle J was a limited partner in Wings. Id. at II-90-92, II-94, and II-105. In addition, although there was some evidence that Circle J held itself out as a general partner, this did not occur until at least November of 1992, after the acts complained of occurred. (R.T. Vol. II, at 104:11-15).
 
 F. SANCTIONS
 
 52
 Circle J seeks attorney's fees for this appeal under Federal Rule of Appellate Procedure 38, asserting that the appeal is frivolous. However, Rule 38 requires that any such request be made by filing a separately filed motion. See Fed.R.App.P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.") (emphasis added); see also, In re American Continental Corp./Lincoln Savings & Loan Securities Litigation, 1996 WL 729599 at * 21 n. 11 (9th Cir.) (refusing to rule on Rule 38 request for attorney's fees because separate motion was not filed). Accordingly, without commenting on the validity of Sovereign's claims, we decline to rule on Circle J's request for sanctions, as it is not properly before us.
 
 
 53
 AFFIRMED.
 
 
 
 *
 The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The case law developed under Rule 41(b) between its promulgation in 1938 and the 1991 amendments to Rule 41(b) and Rule 52(c) is applicable to Rule 52(c). Wright & Miller, Federal Practice and Procedure: Civil 2d § 2573.1 at 494 (1995)
 
 
 [2]
 "The doctrine of res judicata includes two distinct types of preclusion, claim preclusion and issue preclusion." Robi, 838 F.2d at 321. Sovereign does not claim that issue preclusion applies to this case. Moreover, any attempt to apply issue preclusion to a default judgment in this Circuit would clearly be unfounded. See In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir.1983) (default judgment does not trigger issue preclusion because the court does not get the benefit of deciding the issue in an adversarial context); see also Restatement (Second) of Judgments § 27, comment e ("[i]n the case of a judgment entered by ... default, none of the issues is actually litigated. Therefore, the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action.")
 
 
 [3]
 The Court stated as follows:
 I would reject as a ruling of law an argument that res judicata and privity would apply here to impose direct liability for the judgment already entered upon Defendant Circle J. If on the other hand what your argument is that they are bound as a party in privity--in fact they were a party, and are a party to the lawsuit--to the judgment against Wings, I fully accept that argument. In other works, they could not collaterally or in a subsequent effort--for example, in a direct lawsuit against the individuals here or against Circle J., they could not attempt to say there is not judgment against Wings. They were, of course, to that extent parties in privity; in fact, they were parties to the lawsuit, let alone parties in privity by some other agreement as well. But that does not--they nevertheless are parties of the lawsuit, they have their own right to defend the lawsuit. And accordingly I have to reject an argument that says res judicata and privity means that they are liable without further--simply as a result of the judgment entered into against Wings. E.R. Vol. X, exh. 14 at 3-4.
 
 
 [4]
 Circle J was protected from liability in its capacity as a limited partner of Wings by the provisions of Nev.Rev.Stats. § 88.430(1), which provides that a limited partner is not liable for the obligations of the partnership. See Nev.Rev.Stats. § 88.430(1) (1993)