# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 99-6073/6074

_____

In re: Donald Dean Sears and        \*
Daphne Alice Sears,        \*
       \*
         Debtors        \*
       \*
Jerry Cepelak, Jr., Mark Cepelak,        \*
Jerry F. Cepelak and Shirley J. Cepelak,        \*
       \*    Appeal from the United States
         Appellees and Cross-Appellants        \*    Bankruptcy Court for the
       \*    Southern District of Iowa
           v.        \*
       \*
Donald Dean Sears and        \*
Daphne Alice Sears,        \*
       \*
         Appellants and Cross-Appellees        \*

_____

Submitted: January 27 , 2000
Filed: March 28, 2000

_____

Before KOGER, Chief Judge, DREHER and KISHEL[1], Bankruptcy Judges

_____

KISHEL, Bankruptcy Judge

_____

[1]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota, sitting by designation.

The Debtors, Daphne and Donald Sears, appeal the judgment of the bankruptcy court[2] that denied them a discharge under Chapter 7, for knowingly and fraudulently making a false oath in connection with their case. Creditors Jerry F., Shirley, and Mark Cepelak and Jerry Cepelak, Jr. cross-appeal from a companion judgment that determined that the Debtors' debt to them was not the result of a willful and malicious injury to the Cepelaks or their property, and hence was not excepted from discharge in bankruptcy. For the reasons set forth below, we affirm the judgment of denial of discharge, and dismiss the cross-appeal as moot.

## I. BACKGROUND

The Cepelaks and the Debtors are neighbors in Union, Iowa. Over a term of years in the 1970s, the Debtors acquired various parcels of real estate in the vicinity of the Cepelaks' residence. The Debtors carried on a junk, salvage, and repair business on the properties. In connection with it, they acquired large quantities of used heavy and light equipment, motor vehicles, metal tanks, and the like, and stored them on-site. The Cepelaks began objecting to the Debtors about the condition of their property in the late 1970s. In 1996, they sued the Debtors in the Iowa state courts, claiming that the Debtors were maintaining a nuisance. After a jury trial, the state court entered judgment in the Cepelaks' favor against the Debtors for a total of $27,000.00 in damages.

After the Cepelaks initiated garnishment and levy proceedings, the Debtors filed a voluntary petition for bankruptcy relief under Chapter 7. They filed their schedules and statements on March 13, 1998. The Cepelaks timely filed a two-count complaint in adversary proceedings against the Debtors, seeking alternate relief: a judgment under 11 U.S.C. §727(a)(4), denying the Debtors a general discharge in bankruptcy, or a judgment under 11 U.S.C. §523(a)(6), excepting the Debtors' debt to them from discharge.

At trial, the Debtors moved for judgment in their favor after the Cepelaks had rested. The bankruptcy court denied the motion, and directed the Debtors to present evidence.

---

[2]The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District of Iowa.

After the close of evidence and argument, the bankruptcy court rendered its decision on the record. It denied the request for a determination of nondischargeability, under alternate approaches. First, it noted that the state-court jury had found that the Debtors' conduct had not been "directed specifically at" the Cepelaks. On that basis, it held that the Cepelaks were collaterally estopped from maintaining that the injury to them or their property had been "malicious" within the meaning of §523(a)(6). It then concluded that the Cepelaks' case failed even if collateral estoppel did not lie--because the evidence could not independently support a finding of malice, that the Debtors "intended any sort of direct injury to the Cepelaks." Holding that the Cepelaks had "not met their burden of proof that their particular debt should be excepted from discharge," the bankruptcy court granted judgment to the Debtors on that count.

On the Cepelaks' objection to general discharge, the bankruptcy court found that the Debtors had failed to include entries on their bankruptcy statements and schedules for three "rather substantial items" of personalty that had been present on their real estate around the time of their bankruptcy filing. These items were a Drott yellow caterpillar tractor with front-end loader (termed "the Drott yellow cat" by counsel and the bankruptcy court),[3] a Case backhoe with front-end loader, and a Toro front-deck grass mower. The bankruptcy court held that the disclosure of certain information on these items was material to the administration of the bankruptcy estate: whether the Debtors had held an ownership interest in them, whether they had held possession of them for another person, or whether they had transferred them to another person pre-petition. It held that the failure to disclose any such information made the Debtors' statements and schedules "false statements, because they are not full statements." It then found that Debtor Donald Sears "was doing well" health-wise when he reviewed the schedules before signing them, notwithstanding severe medical problems in the recent past; that in preparing the schedules the Debtors had discussed them with each other and with their daughter; and that they had consulted an auctioneer for valuations on various items. "[F]ind[ing] it hard to believe" that the Debtors could inadvertently fail to note the three items in question, given the detail with which they had scheduled many smaller items of personalty, the bankruptcy court held that the Cepelaks had

---

[3]This implement is of the sort colloquially called a "bulldozer."

met their burden of proof on the elements of §727(a)(4). It thus denied the Debtors a discharge under Chapter 7.

The Debtors appeal from the judgment of denial of discharge, on two main theories: the bankruptcy court erred in denying their motion for judgment on partial findings,[4] and it erred in holding for the Cepelaks on the merits. The Cepelaks cross-appeal from the judgment of determination of dischargeability. They argue that the bankruptcy court erred in its application of collateral estoppel and in its alternate holding that the evidence could not support a finding of malice under §523(a)(6).

## II. STANDARD OF REVIEW

### A. Denial of Motion for Judgment on Partial Findings.

In a trial to the court, a motion for judgment on partial findings can serve the same function as the motion for judgment as a matter of law that is made in a jury trial: to terminate a factually-unsupported claim or defense after its proponent has put in all of its evidence. On appeal, however, the standard of review is different. The denial of a motion for judgment as a matter of law is reviewed *de novo*. *Stoebner v. Lingenfelter*, 115 F.3d 576,

---

[4]Before the bankruptcy court, the Debtors' counsel identified his motion as one for a directed verdict. The nomenclature was wrong as a matter of both historical terminology and context. The federal rules no longer identify a procedure in the words counsel used; a 1991 amendment changed the term to "motion for judgment as a matter of law." *See Advisory Committee Notes, Rule 50, 1991 Amendment*, reprinted in 12A CHARLES ALAN WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE: CIVIL, Appendices at 509-512 (West supp. 1999). In any event, the decision in a trial to the court is not rendered by a verdict. Where the court is the fact-finder, a motion to terminate the litigation for failure to prove up a *prima facie* case is currently made under FED R. CIV. P. 52(c), and is termed a "motion for judgment on partial findings." *Geddes v. Northwest Mo. State Univ.*, 49 F.3d 426, 429 n. 7 (8th Cir. 1995); *Williams v. Mueller*, 13 F.3d 1214, 1215 (8th Cir. 1994); *Madison v. Frank*, 966 F.2d 344, 345 n. 2 (8th Cir. 1992). *See also Advisory Committee Notes, Rule 52, 1991 Amendment*, reprinted in WRIGHT, ET AL, Appendices at 521-522. FED R. CIV. P. 52 is incorporated by FED. R. BANKR. P. 7052, which governed the Cepelaks' adversary proceeding before the bankruptcy court.

578 (8th Cir. 1997). As a general proposition, the review of the disposition of a motion under Rule 52(c) goes to the findings made on the nonmoving party's evidence, and whether they are clearly erroneous. *London v. Directors of the DeWitt Public Schools*, 194 F.3d 873, 875 (8th Cir. 1999); *Geddes v. Northwest Mo. State Univ.*, 49 F.3d at 429 n. 7. *See also Biggs v. Logicon, Inc.*, 663 F.2d 52, 53 (8th Cir. 1981) (decided under former FED R. CIV. P. 41(b)[5]).

The standard of review, however, is different when the appeal is from the denial of a motion for judgment on partial findings. Such a holding is not based on findings of fact as such. Under former Rule 41(b), a defendant that moved for involuntary dismissal after the close of the plaintiff's case, but then offered evidence in its own behalf, was deemed to waive its right to press for involuntary dismissal on the ground that the plaintiff's *prima facie* case was insufficient. *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 724 (8th Cir. 1978). "In such situations the sufficiency of the evidence is tested on appeal by viewing *the entire record*, reversal being warranted only if the [trial] court's findings are clearly erroneous." *Id*. (emphasis added). *See also Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1503 (11th Cir. 1993); *duPont v. Southern Nat'l Bank of Houston*, 771 F.2d 874, 881 (5th Cir. 1985); *Sanders v. Gen. Serv. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983); *Wealden Corp. v. Schwey*, 482 F.2d 550, 551 (5th Cir. 1973). Rule 52(c)'s status as successor to Rule 41(b) makes this principle applicable to the denial of a motion for judgment on partial findings.[6] *See* n. 5, *supra*.

---

[5]With the 1991 amendments to the Federal Rules of Civil Procedure, Rule 52(c)'s procedure for judgment on partial findings replaced Rule 41(b)'s one for involuntary dismissal. *Williams v. Mueller*, 13 F.3d at 1215. The published decisions apply the same standard of review to the procedures under both rules.

[6]As yet, there do not appear to be any published decisions that extend the principle this way. In unpublished decisions, two Circuits have held that the grant or denial of a motion under Rule 52(c) after the close of a plaintiff's case is discretionary with the trial court, given the rule's use of the permissive "may." *In re Fincher*, 181 F.3d 104 (table), 1999 WL 26621 **3 (6th Cir. 1999); *In re Sovereign Partners*, 110 F.3d 70 (table), 1997 WL 160279 ** 3-4 (9th Cir. 1997).

5

## B. Determinations on the Merits.

In an appeal from a decision on the merits, the bankruptcy court's findings of fact are reviewed for clear error. FED. R. BANKR. P. 8013[7]; *In re Miller*, 16 F.3d 240, 242-243 (8th Cir. 1994); *In re Muncrief*, 900 F.2d 1220, 1224 (8th Cir. 1990); *In re Usery*, 242 B.R. 450, 456 (B.A.P. 8th Cir. 1999); *In re Kula*, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). A finding of fact is "clearly erroneous" ". . . when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542 (1948)); *In re Waugh*, 95 F.3d 706, 711 (8th Cir. 1996); *In re Lockwood Corp.*, 223 B.R. 170, 174 (B.A.P. 8th Cir. 1998). This standard requires significant deference to the bankruptcy court as finder of fact: "If the [trial] court's account of its evidence is plausible in light of the record viewed in its entirety, the [appellate tribunal] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. at 573-574; 105 S.Ct. at 1511. *See also In re Consumers Realty & Dev. Co., Inc.*, 238 B.R. 418, 422 (B.A.P. 8th Cir. 1999). "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. at 574, 105 S.Ct. at 1511.

The bankruptcy court's conclusions of law are subject to *de novo* review on appeal. *In re Cochrane,* 124 F.3d 978, 982 (8th Cir. 1997).

---

[7]In pertinent part, this rule provides:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

# III. DISCUSSION

## A. Denial of Discharge Under §727(a)(4)(A).

### 1. Generally.

The Cepelaks' objection to discharge was premised on 11 U.S.C. §727(a)(4)(A). That statute provides:

> (a)      The court shall grant the debtor a discharge, unless--
>
> . . .
>
>      (4)      The debtor knowingly and fraudulently, in or in connection with the case--
>
>          (A)      made a false oath or account . . .

The Debtors submitted their bankruptcy statements and schedules on the prescribed forms, which required them to verify the averments in them under penalty of perjury. By statute, that has the force and effect of an oath. 28 U.S.C. §1746. *See also Dickinson v. Wainwright,* 626 F.2d 1184, 1196 (5th Cir. 1980) (subscription to false statement made under 28 U.S.C. §1746 equates to false oath).

Section 727(a)(4)(A) provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest to his case. In doing so, it bolsters the basic functions of estate administration and adjudication in bankruptcy. *Mertz v. Rott*, 955 F.2d 596, 698 (8th Cir. 1992); *In re Baskowitz,* 194 B.R. 839, 843 (Bankr. E.D. Mo. 1996). *See also Payne v. Wood*, 775 F.2d 202, 206 (7th Cir. 1985) (requirement that debtor fully schedule all assets allows trustee to identify all claims of ownership and title and to challenge suspect ones). "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Mertz v. Rott*, 955 F.2d at 698 (interior quotation marks omitted).

7

To merit denial of discharge, a debtor's misrepresentation or omission must be material. *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990). The threshold to materiality is fairly low: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (*per curiam*) (quoted and relied on in *In re Olson*, 916 F.2d at 484). *See also Mertz v. Rott*, 955 F.2d at 598. The value of omitted assets is relevant to materiality, but materiality will not turn on value. *In re Olson*, 916 F.2d at 484. An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent. *Mertz v. Rott*, 955 F.2d at 598 (denying discharge for knowing and fraudulent omission of entitlement to state tax refund of $1,358.00).

The question of a debtor's knowledge and intent under §727(a)(4) is a matter of fact. *In re Olson*, 916 F.2d at 484. *See also Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251-252 (4th Cir. 1987); *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). On the other hand, the issue of materiality is best characterized as a mixed one of law and fact. The existence of a relationship between the subject matter of an omission or misrepresentation and the concerns of the bankruptcy process rests on connections in fact. Categorizing such relationships between substantial and insubstantial, however, requires the application of a legal standard, the drawing of a line by the court. *Cf. In re Aboukhater*, 165 B.R. 904, 911 (B.A.P. 9th Cir. 1994) (summarily holding that status of omitted property as property of the estate was issue of fact that had to be resolved in favor of objector to discharge on debtor's motion to dismiss under Rule 12(b)(6)).

2. Denial of Motion for Judgment on Partial Findings.[8]

At trial, the Cepelaks rested after eliciting the testimony of two witnesses: Jerry Cepelak, Jr., and a deputy sheriff who had inspected the Debtors' real estate during a levy

---

[8]Because the outcome on the Debtors' appeal moots the dischargeability proceeding, see pp. 16-17 *infra*, we have treated their motion for judgment on partial findings only as it pertained to the Cepelaks' objection to discharge.

8

of execution just before their bankruptcy filing. Arguing that this testimony was not sufficient to establish a *prima facie* case, the Debtors' counsel moved for a judgment on partial findings.

The bankruptcy court denied the motion, but on a different ground. Counsel disagreed whether they had had an understanding that the Debtors would take the witness stand in their own case in chief without being called first as adverse witnesses in the Cepelaks'. The bankruptcy court noted the inevitability of an appeal, no matter the outcome at trial. Stating that a remand for additional evidence was "the last thing we need," it denied the motion and directed the Debtors' counsel to call their first witness.

However accurate its underlying prediction, the bankruptcy court's rationale was not responsive to counsel's arguments. An appellate tribunal, however, may affirm on any ground that is supported by the record, regardless of the expressed basis for denial of the motion. *Wycoff v. Menke*, 773 F.2d 983, 986 (8th Cir. 1985); *Reeder v. Kansas City Bd. of Police Comm'rs*, 733 F.2d 543, 548 (8th Cir. 1984); *In re McGowan*, 226 B.R. 13, 18 (B.A.P. 8th Cir. 1998). We thus are not bound to reverse or remand, if an application of Rule 52(c) on its terms would have led to the same outcome.

In making his motion, the Debtors' counsel unwittingly set up a Hobson's choice for himself and his clients.[9] Under the caselaw under former Rule 41(b), his election to proceed with evidence of his own results in a deemed waiver of any challenge to the sufficiency of the Cepelaks' *prima facie* case.

Even if the deemed waiver principle did not survive the 1991 rules amendments, the bankruptcy court reached a correct outcome in denying the Debtors a judgment on partial findings. The issue was whether the Cepelaks had presented substantial evidence to support findings of fact on each of the elements of their objection to discharge. *London v. Directors*

---

[9]This choice, of course, was whether to go ahead with evidence, were the motion denied. The concomitant risk was that his own evidence might fill in any holes in the Cepelaks' case, had the bankruptcy court really erred in denying the motion. *See Sanders v. Gen. Serv. Admin.*, 707 F.2d at 971; *Wealden Corp. v. Schwey*, 482 F.2d at 551-552.

*of the DeWitt Public Schools*, 194 F.3d at 876; *Geddes v. Northwest Mo. State Univ.*, 49 F.3d at 429 n. 7. If they had, the burden of production shifted over to the Debtors, *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994), and the bankruptcy court did not err in denying the motion.

Ultimately, though it was a bit thin, the Cepelaks' case was enough to present to a finder of fact. The bankruptcy court received all exhibits–including the Debtors' statements and schedules–by consent of the parties. In sum, the deputy sheriff testified that on January 29, 1998 the Drott yellow cat and the Toro mower were on the Debtors' real estate, amidst the large mass of personalty that unquestionably belonged to them. Jerry Cepelak, Jr. then testified in greater detail as to the several items in controversy. He stated that the Case backhoe had been on the Debtors' property "for quite awhile" before their bankruptcy filing; that, when operated, it had been operated by Debtor Donald Sears; and that it had a value of $10,000.00.[10] As to the Drott yellow cat, he testified that he had seen it consistently on the Debtors' real estate for several years before their bankruptcy filing; that the prior owner, Keith Hoy, had told him that he had sold it to Debtor Donald Sears; that in his observation the "persons operating that particular piece of equipment" had been "[j]ust him"–Donald Sears--and that its value was $5,000.00. In this witness's opinion, the backhoe and the cat were the two most expensive pieces of equipment on-site. As to the Toro front-deck mower, he testified that it had "always been there" on the property, usually right in the middle of the lot, and that Donald Sears again had frequently used it there to mow the grass.

This evidence of long-term presence and consistent pattern of use logically supports an inference of some kind of legal claim of right by the Debtors, whether that be ownership, lease, or possession in consideration for some other good or service. Such a finding, combined with the evidence of substantial value, made out a *prima facie* case on materiality. Disclosure of the Debtors' interest in the items, then, was required under law. The choice

---

[10]The Debtors' counsel objected to this testimony; the ground was that Jerry Cepelak, Jr., was not competent as a witness on valuation. The bankruptcy court overruled the objection, holding that his occupation as a construction contractor gave him adequate familiarity with the values of heavy equipment. On appeal, the Debtors do not take exception to this ruling.

of the situs of the disclosure lay with the Debtors, and depended on the nature of the interest they maintained; if they held ownership, it would have been on Schedule B, and if they held possession by agreement, through bailment, or by sufferance, it would have come under Item 14 of their Statement of Financial Affairs.[11]  The three items do not appear by any recognizable description on the Debtors' Schedule B; they checked a box for "None" on Item 14.  The lack of any disclosure would make one or the other a false statement.[12]

On the statutory element of knowledge, the evidence on the size, value, and use of the subject assets would support an inference that the Debtors knew they were on the property, and in their possession.[13]  The detail with which the Debtors itemized other vehicles and equipment on their Schedule B, the proximity of Item 14 on the Statement of Financial Affairs to the signature line, and the clarity of Item 14's instruction would all support an inference that they knew that they had to disclose the items in controversy.

---

[11]The instructions for this item read:

14.  Property held for another person.

List all property owned by another person that the
debtor holds or controls.

[12]Indeed, the computer printout of the Statement of Financial Affairs for the Debtors' very own filing put the instruction and the blank for Item 14 on the same page as their signature lines.

[13]The observation has to be made: how can a person reasonably deny knowing that a bulldozer and a backhoe are in the front yard?  The question is not as facetious or as rhetorical as it first seems.  The whole point of the Debtors' contention with the denial of their motion under Rule 52(c) is that there was no evidence in the record to support findings on the subjective elements of §727(a)(4)(A).  When counsel argued the motion, neither of the Debtors had yet testified to any of the predicate facts, including their awareness of the assets and their understanding of their interest in them.  As to those points, the Cepelaks' *prima facie* case had to be made by an inference.  Common sense and ordinary human experience made that inference an easy one, but it still had to be propelled on some basic evidence.

11

The other statutory intent element is fraud–which in this context properly is equated with an intent to hide possession, ownership, or claim of right by simply not disclosing them on bankruptcy statements and schedules. As to this element, the Cepelaks' case in chief was not especially pointed, and their attorney's argument was less so. However, the other evidence as a whole, viewed against the clarity of the form instructions on the statements and schedules, could support an inference of such intent.[14] *In re Calder*, 907 F.2d 953, 955-956 (10th Cir. 1990); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d at 252 (both noting that trial court may infer fraudulent intent under 727(a)(4)(A) from all facts and circumstances in case, given difficulty of relying only on debtor's testimony on state of mind).

All of the cited evidence logically went to the various elements of the Cepelaks' objection to discharge, and enough of it went to each such element that findings could have been made in their favor. The Cepelaks having thus made out a *prima facie* case under §727(a)(4)(A) through their own evidence, it was not error for the bankruptcy court to deny the Debtors' motion for judgment on partial findings.

3. Determination on the Merits.

On the merits of the Cepelaks' objection to discharge, only one issue is presented on appeal: the adequacy of evidence to support the bankruptcy court's implicit findings[15] of

---

[14]Some of the caselaw under former Rule 41(b) opined that the plaintiff need not be given the benefit of favorable inferences on a motion for dismissal after the close of its case. *E.g., Williams v. Mueller*, 13 F.3d at 1215-1216; *Madison v. Frank*, 966 F.2d at 345. The application of this principle perforce is relaxed where an element almost invariably is proven by inference drawn from circumstantial evidence. Such is the case with knowledge, intent, and other states of mind. *In re Calder*, 907 F.2d at 955-956; *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d at 252 (both noting that in proceeding under 727(a)(4)(A) "a debtor is unlikely to testify directly that his intent was fraudulent . . ."). *Cf. In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987) (applying 11 U.S.C. §523(a)(2)(A) and reaching same conclusion re: mode of proof).

[15]The bankruptcy court was somewhat brief in its recitation of facts, but clear in its statement that the Cepelaks had fully met their burden of proof. Even where a trial court does not "enunciate factual findings as such," it will be reviewed on appeal as if it had, as

knowledge and fraudulent intent on the part of the Debtors.[16]  The making of an inference on a party's subjective state of mind under §727(a)(4) is a fact-finding process. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d at 252.  As a result, the inquiry on appeal is narrow: whether the result of the process was clearly erroneous.

After a thorough review of the record, we do not harbor the "definite and firm conviction" that the bankruptcy court made a mistake in its findings on the Debtors' intent. Though there was no direct evidence that the Debtors intended to deceive any recipient or reader of their statements and schedules, there was a critical mass of circumstantial evidence to support an inference to that effect.

The array includes circumstances that suggest that the Debtors had tried to hide their interest in the single most valuable piece of equipment, the Case backhoe, from the sheriff's levy made at the Cepelaks' instance.  Shortly before his hospitalization, and in the face of the Cepelaks' post-judgment collection effort, Donald Sears moved the backhoe from the Debtors' front yard to the Ford garage in Union.  He retrieved it after he was released from rehabilitation therapy.  He did not offer a valid reason for the removal–maintenance, repair, or the like–and in fact had done much of the necessary maintenance on the backhoe ever since his purchase from Keith Hoy.

There is also much circumstantial evidence to support the finding that the Debtors fully understood their duty to accurately complete their schedules.  During the last weeks of Donald Sears's hospitalization, Daphne Sears carefully reviewed the contents of the Debtors'

---

long as its decision is "based on explicit determinations."  *In re Clarkson*, 767 F.2d 417, 419 (8th Cir. 1985).

[16]The other elements of §727(a)(4)(A) either were uncontested or were established by the Debtors' admissions in testimony.  Debtor Daphne Sears conceded on direct examination that, at the very least, the three pieces of equipment "should have been listed" under Item 14 of the Statement of Financial Affairs.  Donald Sears was not as candid, but he did acknowledge the applicability of "that other thing," *i.e.*, Item 14, to the subject matter of the three pieces of equipment.  These concessions satisfied the Cepelaks' burden of proof on materiality and falsity; the Debtors' verification established the relevant portions of the statements and schedules as a false oath.

13

house, garage, and outbuildings with her daughter's assistance, after discussing the need to do so with her bankruptcy counsel. She used an appraiser to arrive at values. She submitted enough information to counsel to allow the preparation of detailed entries for personalty on Schedule B. Though Donald Sears had no involvement in the preparation, he acknowledged that he "look[ed] at the paper before he signed it," and that he "[knew his] property pretty good." Daphne Sears acknowledged that her husband was "'100 percent' his normal self" on the day he reviewed and signed the schedules, despite the gravity of his medical condition several months earlier. (Within a day or two of the signing, he retrieved the Case backhoe from the Ford garage.) Daphne Sears protested on direct examination that the Debtors had not fully itemized their personalty, "a lot of stuff," on Schedule B, and that that would have been "impossible." Nonetheless, the schedules did itemize 103 different classes of items, down to stated individual values of $15.00. The likely values of the Drott yellow cat and the Case backhoe each exceeded the very largest stated value of any such class of personalty, and exceeded the stated values of most such classes by multiples of 10 to 20.

Both Debtors' testimony regarding the state of ownership of the three items was terse, summary and vague. Its content was often the result of leading by their counsel. The Debtors attested having bought the Case backhoe from Keith Hoy or his estate, and then to having conveyed ownership to their son Mark. The transfer was made on an indistinctly-described understanding that Mark had done enough work for them that he deserved to receive it. The proffered reason was Mark's need for it in a single personal endeavor–putting in a new water line for his home. At all relevant times, Mark Sears was employed as the manager of a concrete plant; Daphne Sears admitted that he had no need to possess or use a backhoe in his employment. The great preponderance of the evidence was that Mark rarely, if ever, used the backhoe after the purchase from Hoy, and that possession and use lay almost exclusively with his father. Jerry Cepelak, Jr. testified that he did not remember ever seeing the backhoe leave the Debtors' property, other than the removal to the Ford garage. In its findings, the bankruptcy court made much of a baffling pair of three-part

14

exchanges among the Cepelaks' counsel, the Court, and Donald Sears during the latter's testimony regarding the backhoe.[17]  It was not inappropriate that it did.

Like testimony went in regarding the Drott yellow cat.  This included the direct contradiction between Donald Sears's November, 1996 testimony regarding "my dozer" in a deposition in the state-court lawsuit, and the Debtors' current insistence that they had transferred the cat to their son early after their acquisition from Hoy.

The same sort of inconsistency pervaded the Debtors' testimony on the Toro mower. This item was allegedly the property of a handicapped sibling who lived several miles away, and who "sometimes . . . like[d] to own things but he [couldn't] run them, and so he let[ ] other people use them . . ."

The Debtors' proffered excuse for their failure to schedule the three items was relatively weak: Daphne Sears's statement that she had "just figured because it wasn't [their] stuff, [she] didn't need to list it."  Topping this was the curious conclusion she drew, that she "didn't realize that [she] needed to list what other people owned" on Item 14 of the Statement of Financial Affairs.

Finally, there is the fact that the Debtors never amended their statements and schedules, even after the omissions were drawn to their attention in the adversary proceeding.

The facial content of much of this evidence did not go directly to the issue of intent to deceive in submitting bankruptcy schedules.  Nonetheless, it did reflect on the Debtors' veracity generally.  It was for the bankruptcy court, as trier of fact, to conclude whether the

---

[17]When the Cepelaks' counsel twice inquired regarding the circumstances of the Debtors' original acquisition, Donald Sears balked at answering, and asked the bankruptcy court whether he had to.  When directed to respond, he answered "I don't know," both times.

15

Debtors' explanations as to ownership and possession were facile or forthright, and in turn how the credibility of the explanations bore on their protestations of inadvertence in omitting the three items.

Ultimately, the bankruptcy court made its assignment of credibility, and weighed the evidence before it. Clearly, in the bankruptcy court's view, the body of circumstantial evidence outweighed the Debtors' summary protestations of mistake and inadvertence. The failure to amend reinforced the suggestion that the omissions were deliberate. *Mertz v. Rott*, 955 F.2d at 598-599. Given the relative weight of the two sides' evidence and the contradictions in the Debtors' proof, it was not clear error to largely reject the Debtors' testimony, to rely on the greater weight of the circumstantial evidence, and to draw an inference adverse to the Debtors on the elements of knowledge and fraudulent intent. *In re Le Maire*, 898 F.2d 1346 (8th Cir. 1990) (*en banc*) ("even greater deference to the trier of fact is demanded" when findings turn on an assessment of credibility). To the extent that the Debtors' evidence did support a different version of the operative facts, the bankruptcy court's view is nonetheless plausible and supported by the evidence. As an appellate tribunal, we must uphold its choice between the two. *In re Consumers Realty & Dev. Co., Inc.*, 238 B.R. at 425 (citing *Anderson v. Bessemer City*, 470 U.S. at 573-574, 105 S.Ct. at 1511-1512).

### 4. Conclusion, as to Objection to Discharge.

The bankruptcy court's finding that the Debtors acted knowingly and fraudulently when giving a false oath for their property schedules and Statements of Financial Affairs was not clearly erroneous.

### B. Denial of Discharge Under §523(a)(6).

The Cepelaks cross-appeal from the judgment of the bankruptcy court that they had failed to prove that the Debtors had willfully and maliciously inflicted an injury on them or their property while they maintained the nuisance. Since the granting of an exception to discharge under §523(a) is subsumed within a denial of general discharge under §727(a), the cross-appeal is mooted by our disposition of the Debtors' appeal. *In re Aboukhater*, 165

16

B.R. at 912 (creditor's success on objection to discharge moots companion dischargeability proceeding); *In re Maltais*, 202 B.R. 970, 810 (Bankr. D. Mass. 1996); *In re DeBruin*, 144 B.R. 90, 94 (Bankr. E.D. Wis. 1992); *In re Watson*, 78 B.R. 267, 271 (Bankr. C.D. Cal. 1987).

## IV.  CONCLUSION

The bankruptcy court did not err in ruling that the Cepelaks had met their burden in objecting to the grant of general discharge to the Debtors.  The Cepelaks' cross-appeal is moot.  Accordingly, the bankruptcy court's judgment is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT