# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1119

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Kenneth L. Kaelin, | * | |
| | * | |
| Debtor. | * | |
| -------------------------------------- | * | |
| | * | |
| Kenneth L. Kaelin, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellant Panel |
| | * | for the Eighth Circuit |
| Daniel Bassett, Patricia Bassett, | * | |
| John V. LaBarge, Jr., | * | |
| | * | |
| Appellees. | * | |
| | * | |

_____

Submitted: June 13, 2002

Filed:   October 21, 2002

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

In this involuntary bankruptcy proceeding, Appellant/Debtor Kenneth Kaelin (Kaelin) sought to amend his listing of exempt property–Schedule C–Property Claimed as Exempt–to include an action for professional malpractice against his attorneys in a related tort action. The bankruptcy court denied Kaelin's motion to amend Schedule C–Property Claimed as Exempt and he appealed to the Bankruptcy Appellate Panel (BAP) for the Eighth Circuit. The BAP affirmed the decision. For the reasons stated herein, we reverse and remand to the bankruptcy court to allow Kaelin to amend Schedule C.

## I.

While driving drunk, Kaelin rear-ended a snow plow driven by Appellee Daniel Bassett. Bassett was injured in the accident. When Kaelin's insurer, IGF Insurance Company, failed to settle Bassett's claims, Bassett and his wife retained counsel. Further attempts by the Bassetts to negotiate a settlement with IGF were unavailing. A final offer to settle the entire claim within Kaelin's $25,000 liability policy limit was made by the Bassetts' counsel on September 2, 1997. The offer stated it would remain open until September 19, 1997. IGF did not accept the Bassetts' offer to settle the claim for $25,000. As a result, the case went to trial and the Bassetts obtained a jury award of $1,553,000 in damages, including $500,000 in punitive damages. Kaelin was represented at the personal injury trial by attorneys Jerome Duff and Tom McDonnell.

The Bassetts' attorney believed that Kaelin had a viable bad faith failure to settle claim against IGF. The Bassetts offered Kaelin an opportunity to limit his personal liability in exchange for his assignment of, or cooperation in pursuing, a bad faith claim against IGF. Kaelin refused the Bassetts' offer. Shortly thereafter, the Bassetts filed an involuntary petition in bankruptcy court against Kaelin, in which Appellee John LaBarge was appointed Chapter 7 Trustee. Pursuant to 11 U.S.C. § 523(a)(9), a debt that results from driving while intoxicated may not be discharged.

2

The Bassetts sought and received an order from the bankruptcy court ruling that Kaelin's debt to the Bassetts was a non-dischargeable debt.

In his bankruptcy schedule, Kaelin listed the bad faith claim against IGF as exempt. The Bassetts and the Trustee objected, but prior to a hearing on the issue the parties reached a settlement. The settlement released Kaelin from the judgment if the Bassetts recovered in the bad faith suit against IGF. If the Bassetts did not recover, they would not garnish Kaelin's wages until his daughter turned eighteen. The bankruptcy court was informed of the settlement and a consent order was entered providing that Kaelin's bad faith refusal to settle claim against IGF was non-exempt property.

The Trustee moved for, and was granted, an application to employ counsel for the bad faith claim. Later, the Trustee filed an amended application to expand the scope of his counsel's employment to include the pursuit of a claim of legal malpractice against Kaelin's personal injury attorneys, Jerome Duff and Tom McDonald. Prior to the filing of this amended application by the Trustee, Kaelin had no knowledge of a potential claim against his personal injury attorneys. However, within a week of learning of this potential asset in the bankruptcy estate, Kaelin amended his bankruptcy schedule and filed a motion for leave to amend Schedule C to exempt this legal malpractice claim. Kaelin also sought to set aside the consent order sustaining the objection to exemption and to rescind the consent agreement because Kaelin believed that the Bassetts had negotiated in bad faith by not disclosing the potential claim against his attorneys and their desire to pursue it.

During the hearing on these motions, Kaelin's counsel withdrew his attempt to rescind the consent agreement, but continued his efforts to exempt the malpractice suit. The bankruptcy court found, and the BAP affirmed, that it was the intent of Kaelin or his counsel to hinder or delay a possible recovery by the Bassetts and the Trustee in the legal malpractice claim and that Kaelin did not intend to preserve the

3

asset for his own benefit. The court found that Kaelin was acting in bad faith in his attempt to exempt a claim he did not intend to pursue. The motion for leave to amend the exemption schedule was denied.[1]

## II.

This court reviews de novo conclusions of law made by the bankruptcy court. Fed. R. Bank. P. 8013; In re Martin, 140 F.3d 806, 807 (8th Cir. 1998). We will not set aside the bankruptcy court's findings of fact unless those findings are clearly erroneous. Fed. R. Bank. P. 8013; In re Usery, 123 F.3d 1089, 1093 (8th Cir. 1997). The bankruptcy court has the discretion to deny the amendment of exemptions if the amendment is proposed in bad faith or would prejudice creditors. In re Michael, 163 F.3d 526, 529 (9th Cir. 1998) (citing In re Doan, 672 F.2d 831, 833 (11th Cir. 1982)). Bad faith and prejudice to creditors are findings of fact and therefore subject to review for clear error. See In re Arnold, 252 B.R. 778, 784 (BAP 9th Cir. 2000). "A finding is 'clearly erroneous' when although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

---

[1]The bankruptcy court did not reach the merits of the issue of whether the malpractice claim is an exempt asset and we express no opinion on that matter. See In re Harris, 886 F.2d 1011, 1015 (8th Cir. 1989) ("Permitting amendment of the exemption schedule is to be distinguished from the separate determination to allow the new exemption claim."). The bankruptcy court apparently assumed the asset would be exempt if the amendment to Schedule C was allowed. See Scarlett v. Barnes, 121 B.R. 578, 583 (W.D. Mo. 1990) ("[A] cause of action for legal malpractice is a personal, unassignable claim, [and therefore] it is not subject to attachment and execution and may therefore be exempted from the bankruptcy estate.").

III.

Bankruptcy Rule 1009(a) provides:

> A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

The general rule allows liberal amendment of exemption claims. In re Harris, 886 F.2d 1011, 1015 (8th Cir. 1989); see also In re Williamson, 804 F.2d 1355, 1358 (5th Cir. 1986) ("[T]he general rule is to allow liberal amendment of exemption claims, absent bad faith, concealment of property, or prejudice to creditors."). However, the policy of freely allowing amendment, while the case is still open, is not an absolute and can be tempered by the actions of the debtor or the consequences to the creditors.

The two recognized exceptions to this rule are bad faith on the part of the debtor and prejudice to the creditors. See In re Doan, 672 F.2d at 833 ("[A] court might deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors."); In re Osborn, 24 F.3d 1199, 1206 (10th Cir. 1994) (same); Lucius v. McLemore, 741 F.2d 125, 127 (6th Cir. 1984) (noting that courts may deny an amendment where the debtor has acted in bad faith or where property has been concealed). In denying the motion to amend, the bankruptcy court found both bad faith on Kaelin's part and prejudice to his creditors. The bankruptcy appellate panel affirmed both findings.

5

## A. Bad Faith of Debtor

We review the BAP's finding of bad faith for clear error. See In re Cedar Shore Resort Inc., 235 F.3d at 379. Bad faith is determined by an examination of the totality of the circumstances. See id. at 379 (using bad faith totality of the circumstances test in assessing Chapter 11 petition). In finding that Kaelin exhibited bad faith in seeking to amend his schedule, the BAP cited: (1) the two year delay between the filing of the involuntary bankruptcy proceeding and the proposed amendment; (2) the continued attempts by Kaelin and his attorney to prevent the Bassetts from pursuing IGF on the bad faith claim: and (3) the fact that Kaelin did not want to prosecute the legal malpractice claim, which, in the BAP's view was tantamount to abandoning the asset.

We believe the BAP's characterization of the evidence to be clearly erroneous and conclude that Kaelin did not exhibit bad faith in seeking the amendment. The BAP concluded Kaelin delayed amending his schedules nearly two years because the BAP assumed that Kaelin was aware of the claim at the time the involuntary bankruptcy proceeding was initiated and the schedules filed. However, the evidence establishes that upon learning of the potential claim, Kaelin promptly sought to amend his schedules and moved to exempt the asset. The BAP also found that Kaelin's attempt to rescind the consent agreement was evidence of Kaelin's bad faith. However, the record reflects that Kaelin sought to rescind the agreement because Kaelin believed that the Bassetts had negotiated in bad faith by not disclosing the potential claim and their desire to pursue it. While Kaelin later withdrew the request to rescind the agreement, we do not think this belief and Kaelin's litigation strategy demonstrate bad faith.

According to the BAP, the most important factor in its bad faith calculation was Kaelin's intent to abandon the legal malpractice claim. However, Kaelin's desire to maintain the suit exempt from the bankruptcy estate and his disposition of the

6

claim do not evince bad faith on his part. He was, and apparently remains, satisfied with his legal representation in the suit. Even if we assume, arguendo, that Kaelin was not satisfied with his representation, the asset, i.e., the potential claim, is no less his property. Whether Kaelin chooses to abandon his asset or use it for further consideration in the administration of his bankruptcy estate is his choice.

When it is discovered that a debtor has attempted to hide an asset, it will generally support a finding of bad faith. See In re Doan, 672 F.2d at 833 ("We agree that concealment of an asset will bar exemption of that asset."). There is no evidence that Kaelin sought to hide the legal malpractice claim. Kaelin, after learning of the potential claim, added it to his estate and filed an amendment to exempt. Kaelin testified that he was satisfied with the work of his personal injury attorneys and did not intend to bring a legal malpractice claim against his attorneys. Kaelin also indicated he was tired of the litigation process and had no desire to pursue such a claim.

The mere fact that Kaelin wants to end his participation in litigation does not evidence his bad faith. There may be a multitude of reasons why a debtor seeks to exempt a claim. In this instance, Kaelin's desire for a fresh start, without litigation looming in his future, is a legitimate reason to find his amendment lacks bad faith. Additionally, Kaelin may decide the claim has value and can pursue the claim or sell it to the Bassetts for further consideration on the judgment the Bassetts have against him. We find the court's conclusion that Kaelin's motion to amend was made in bad faith to be clearly erroneous, and therefore, the denial of the motion to amend on that basis was an abuse of discretion.

### B. Prejudice to Creditors

If a proposed amendment to exempt a claim will prejudice creditors, a court may deny the debtor's motion to amend. See In re Calder, 973 F.2d 862, 867-68

(10th Cir. 1992) ("An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors."). Prejudice to creditors can be shown in several ways. First, prejudice may arise if the creditors suffer actual economic loss due to a debtor's delay in claiming his exemption. In re Arnold, 252 B.R. at 787. Prejudice to creditors may also be shown by proving the amendment would harm the litigation posture of the creditors.

> If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment. Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate.

In re Talmo, 185 B.R. 637, 645 (Bankr. S.D. Fla. 1995).

The Bassetts argue that if Kaelin is granted leave to amend his Schedule C and claim the legal malpractice action as exempt, the Bassetts would be severely prejudiced because they would be unable to pursue a potentially valuable cause of action. The Bassetts contend that the malpractice action, along with the bad faith failure to settle claim against IGF, are the only assets with value in Kaelin's estate. The Bassetts maintain that counsel for the Trustee has invested a great deal of time and effort on the legal malpractice claim and that there has been a significant amount of administration on the claim. Because the Bassetts have put this effort into the legal malpractice action, the Bassetts allege that removal of this asset from the estate will prejudice their litigation posture.

First, we note that the Bassetts suffer no actual economic loss beyond the loss that occurs when any asset is claimed exempt. Further, the Bassetts have not shown that their litigation posture has been prejudiced by the exemption claim. The Trustee promptly moved to employ counsel when the potential malpractice claim was

8

discovered and within a few days thereafter Kaelin moved to amend his exemption schedule. The creditors have demonstrated no prejudice to their litigation posture by Kaelin's proposed amendment.

## IV.

We share the bankruptcy court's and the BAP's discomfort with the fact that Kaelin caused serious personal injuries while driving drunk and has not appeared as cooperative as he could be in assisting the victims of his recklessness in achieving a recovery for their injuries. However, that lack of cooperation does not rise to a level of bad faith that would preclude him from exempting property that is otherwise exempt in this involuntary bankruptcy. Accordingly, we reverse the BAP and the bankruptcy court and remand to the bankruptcy court to allow Kaelin to amend Schedule C to claim the malpractice suit as exempt.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9