**In re Cyril J. & Rae Orene BAUER, Debtors.**

No. 02–30738.

United States Bankruptcy Court, D. Minnesota.

March 3, 2003.

Michael Iannacone, Esq, Lake Elmo, MN, for trustee.

Barbara J. May, Esq., Shoreview, MN, for debtors.

### ORDER SUSTAINING OBJECTION TO EXEMPTIONS

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter was heard on the 10th day of February, 2003, on the Trustee's objection to the Debtors' amendment of exemptions to increase the amount of their homestead exemption from $0 to $200,000, and to change their election from Federal to state exemptions. Michael Iannacone represented the Trustee, and Barbara May represented the Debtors. Testimony was taken and arguments heard. The Court, having reviewed the record, and being fully advised in the matter, now makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

Debtor Cyril Bauer is a retired supervisor employee of U.S. West and Qwest. Prior to retirement, he supervised as many as thirty employees. Debtor Rae Orene Bauer also worked for U.S. West and Qwest for 32 years as a testing technician at $18.00 an hour when she retired in 1998, and more recently as a technician for Tech Systems where she earned $23.00 an hour. The Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on February 20, 2002. Debtor Cyril Bauer had filed an unsuccessful Chapter 13 case two years earlier. The same attorney represented the Bauers in both cases, although they are represented in this proceeding by another attorney.

In the schedules filed with both petitions, the Debtors valued their homestead at $80,000. First and second mortgages against the property totaled $81,000.00. They claimed exemption in the equity under 11 U.S.C. § 522(d)(1).[1] The Chapter 7 case was closed as a no asset case on June 6, 2002. Shortly after the case was closed, the Trustee received information from the Debtors' insurer that led him to believe that the Debtors' home was worth substantially more than they valued it in their schedules, and he obtained an order reopening the case to pursue the matter. Thereafter, the Debtors amended their schedules to increase the value of their homestead to $203,000, to change their election from federal to state exemptions, and to increase their homestead exemption to $200,000. The Trustee objects to the amendments on grounds of bad faith, claiming that the Debtors intentionally concealed substantial value of the property in the initial filing. The Court agrees with the Trustee that the Debtors are in bad faith and sustains the objection for the following reasons.

The Debtors purchased the home in 1990 for $70,000, at about the time they married. During the first five years, they started, but did not finish, several large remodeling projects in the large structure. At the time of filing in February of 2002, several rooms were unfinished. The interior was also apparently littered with junk. The Debtors testified that they had lived in a "garbage house," a circumstance of which they were not proud.

The property was assessed for tax purposes for the year 2002 at a value of $203,000. The Debtors testified that they were not aware of the assessed value when they filed the petition for bankruptcy in February 2002. In January of 2002, the Debtors updated their insurance coverage on the home to $276,000. They testified that the upgrade was the suggestion of their insurance agent who, according to the Debtors, contacted them and recommended the increase. They also testified that they did not know what amount the home was insured for when they filed their bankruptcy petition the following month, and did not discover the amount of coverage until recently. The insurance agent was not called to testify.

The Debtors testified that their attorney did not question them about either the insured or assessed values of the home in assisting them in the preparation of their schedules, but simply asked them what they thought the property might be worth. They testified that they relied on their attorney's advice and expertise in connection with preparation of the schedules and simply assumed that he asked the right questions and that they furnished the appropriate information. The attorney was not called to testify.

Within two months of filing their petition in this case, the Debtors received an offer from a company that purchases dis-

---

1. The Debtors did not place a number in the "Value Of Claimed Exemption" column.

tressed properties to purchase the Debtors' home for $150,000. Debtor Cyril Bauer summarily rejected the offer because he believed it too low. He testified that he might have been willing to sell the home for $200,000.

Within a few weeks after the offer, there was a fire in the home, which resulted in an insurance claim based on a replacement cost of $400,950, for the structure. The amount was calculated by an independent certified insurance adjuster, who testified that the figure is a replacement value and does not represent the market value of the home at the time of the loss.

## II.

■■■ Exemptions can be amended at anytime during pendency of a bankruptcy case. *Andermahr v. Barrus*, 30 B.R. 532, 534 (9th Cir. BAP 1983). However, that does not mean that amended exemptions must be allowed. *Id.* Exemptions will not be allowed where property or its substantial value has initially been intentionally concealed from the bankruptcy court and a debtor's estate. *In re Miller*, 255 B.R. 221, 224 (Bankr.D.Neb.2000). Intentional concealment can be inferred from circumstances of the matter, including a nondisclosure that is the result of a reckless disregard by a debtor for the truth of the information furnished. *In re Unruh*, 278 B.R. 796, 803 (Bankr.D.Minn.2002).

■■■ Where sophisticated debtors have important and relevant information on values readily available to them, such as the insured and assessed values of their homestead, and they do not take that information into account in disclosing market value in their schedules, they will ordinarily be held accountable for later substantial discrepancies between stated and actual substantially higher values. On the facts related above, it is clear that, at a minimum, the Debtors failed to disclose substantial value in their home through a reckless disregard for the truth of the information they disclosed in their schedules.

Other information surfaced in this proceeding that reinforces this finding. The reckless disregard for the truth of information in the Debtors' schedules goes beyond the homestead. Debtor Cyril Bauer owned an IRA at filing in the amount of $220,000. It was not disclosed in the Debtors' initial schedules, and the recent amendments do not disclose it either. Cyril Bauer testified that he had informed his attorney of the IRA and was told that it need not be disclosed because it was his retirement and was not property of his bankruptcy estate.[2] As noted earlier, the attorney was not called to testify.[3] When asked whether she disclosed the IRA to their attorney in connection with the Chapter 7 filing, Rae Orene Bauer testified that she spent no time with the attorney, did not read the petition and schedules before signing them, and had still not read them at the time of her testimony.

Finally, the evidence strongly suggests that the Debtors actually believed their home to be worth substantially more at the time of filing than they stated in their schedules, and that they knowingly and intentionally concealed the actual value.

---

**2.** The Chapter 13 schedules listed an "ESOP plan through employer," claimed it not property of the estate and listed the value as unknown. By the time the Chapter 7 was filed, Cyril Bauer had taken early retirement in a lump sum and purchased the IRA, which is not disclosed. The ESOP plan is disclosed in the schedules filed with the Chapter 7 petition.

**3.** A "blame the lawyer" defense will rarely be successful where sophisticated debtors are involved, as the Debtors are in this case. The defense has virtually no chance to succeed where an otherwise available target attorney is not called as a witness.

When presented with a cash purchase offer for $150,000, a few months after filing, rather than express surprise, Debtor Cyril Bauer summarily rejected the offer as too low. That behavior is glaringly inconsistent with a purported good faith belief that the property was worth only $80,000.

## III.

Based on the forgoing, the Court concludes that the amended exemptions claimed by the Debtors should not be allowed because of the Debtors' bad faith. Accordingly, IT IS HEREBY ORDERED that the Debtors' amended exemptions filed August 7, 2002, are disallowed.