# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 03-6011 MN

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Cyril J. Bauer and | * | |
| Rae Orene Bauer, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Cyril J. Bauer and Rae Orene Bauer, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Debtors-Appellants, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Michael J. Iannacone, | * | |
| | * | |
| Trustee-Appellee. | * | |

Submitted: August 19, 2003
Filed: September 16, 2003

Before WILLIAM A. HILL, SCHERMER and FEDERMAN, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Debtors Cyril J. Bauer and Rae Irene Bauer ("Debtors") appeal from the bankruptcy court[1] order granting the objection to the Debtor's amendment of exemptions filed by Trustee Michael Iannacone ("Trustee"). We have jurisdiction over this appeal from the final order and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

ISSUE

The issues on appeal are whether the bankruptcy court erred in finding bad faith on the part of the Debtors and whether it abused its discretion in disallowing the Debtors' attempt to amend their exemptions because of such bad faith. We conclude that the bankruptcy court did not err in finding bad faith nor abuse its discretion in disallowing the Debtors' amended exemptions.

BACKGROUND

On February 20, 2002, the Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. At the time of their bankruptcy filing, neither of the Debtors was employed. Mr. Bauer had retired from the telephone company where he had worked for years, starting in technical support, then working as a supervisor, and eventually earning the position of quality manager. Mrs. Bauer had worked as a technician for the telephone company and later for Tech Systems where she earned $23 an hour prior to being laid off.

In their schedules and statements filed with the bankruptcy court, the Debtors listed the value of their residence at $80,000 and listed the amount of secured debt encumbering the residence at $81,000. Pursuant to Section 522(b)(1) of the

---

[1]The Honorable Dennis D. O'Brien, Chief United States Bankruptcy Judge for the District of Minnesota.

Bankruptcy Code, the Debtors elected the federal exemptions available under Section 522(d) of the Bankruptcy Code and did not assert a homestead exemption in their residence.

Rae Orene Bauer had purchased the three-story residence in 1990 for $70,000. The Debtors had intended to update the house and had begun several improvement projects. At the time of their bankruptcy filing, however, they had not completed many if any of the projects and the house was in a state of disrepair and in need of substantial repairs and improvements.[2] The property was assessed for tax purposes at a value of $203,000 for tax year 2002. The Debtors had increased the homeowner's insurance coverage on their residence to $276,000 in January, 2002.

In April, 2002, the Debtors received an offer to purchase their residence "as is" for $150,000. The Debtors rejected the offer as too low. They believed they should have been able to sell the house at a price that would result in net proceeds between $80,000 and $100,000 in its condition at the time. They believed they could sell the house for $350,000 if they completed certain improvements to the residence.

On May 16, 2002, the Debtors' residence was destroyed in a fire. The Debtors have asserted a claim under their homeowner's insurance policy for $400,953.96. This amount includes a claim of $141,287.84 for the replacement value of the home's contents, resulting in a claim of $259,666.12 for the value of the structure.

On August 7, 2002, the Debtors amended their schedules to increase the value of their residence from $80,000 to $203,000. They also amended their schedule of exemptions to elect the state exemptions rather than the federal exemptions and to

---

[2] According to testimony, the house was stacked with junk and was in a state of complete disarray, bats resided on the third floor, a toilet and bathtub occupied the stairway landing, the walls had holes, wires were exposed, plumbing was not complete, and mouse and bat feces were present.

3

assert a homestead exemption in the amount of $200,000. The Trustee objected to the asserted homestead exemption. The bankruptcy court found the Debtors had sought the amended homestead exemption in bad faith. Accordingly, the bankruptcy court denied the homestead exemption, resulting in this appeal.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885, 888 (8th Cir. 2002). The bankruptcy court has discretion to deny an amendment of exemptions if the amendment is proposed in bad faith. *Id.* Bad faith is a finding of fact which is subject to review for clear error. *Id.* A finding is clearly erroneous when although evidence exists to support it the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* at 889.

## DISCUSSION

Pursuant to Section 522(b) of the Bankruptcy Code, a debtor may exempt property either under the federal exemptions set forth in Section 522(d)[3] or under state or other applicable exemption laws. 11 U.S.C. § 522(b). Exemption claims are generally subject to liberal amendment. *Kaelin*, 308 F.3d at 889; *Armstrong v. Harris (In re Harris)*, 886 F.2d 1011, 1015 (8th Cir. 1989).[4] The right to freely amend exemptions is not absolute, however, and "can be tempered by the actions of the debtor or the consequences to the creditors." *Kaelin*, 308 F.3d at 889. Bad faith on

---

[3] A state may opt out of the federal exemptions, leaving only state exemptions available for debtors. Minnesota has not opted out and therefore debtors in Minnesota may choose between the federal and state exemptions.

[4] *See also* Fed. R. Bankr. P. 1009 permitting a debtor to amend schedules as a matter of course at any time before the case is closed.

the part of the debtor or prejudice to creditors can eliminate a debtor's right to amend exemptions. Here, prejudice to creditors is not at issue; rather, bad faith by the Debtors is.

The Trustee, as the objector, has the burden of establishing bad faith by a preponderance of the evidence. Fed.R.Bankr.P. 4003(c); s*ee also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991). The preponderance of the evidence standard results in a roughly equal allocation of the risk of error between litigants. *Id.*, 498 U.S. at 286, 111 S.Ct. at 659. It is the presumed standard of proof in civil actions unless a particularly important individual interest or right is at stake. *Id.* A debtor has no fundamental right to discharge in bankruptcy which would require a higher standard of proof. *Id.* Bad faith in the exemption context does not warrant a higher burden of proof than fraud in the discharge context.

Bad faith is determined by an examination of the totality of the circumstances. *Kaelin*, 308 F.3d at 889. Here, the bankruptcy court considered the evidence and determined that the Debtors had acted in bad faith in listing the value of their home at $80,000 in February of 2002. In January of 2002, the Debtors had increased their homeowner's insurance coverage on the residential structure to $276,000. Their residence was assessed at $203,000 for real property taxes for tax year 2002. Less than two months after filing their bankruptcy petition the Debtors summarily rejected an offer to purchase their house "as is" for $150,000 because they believed the value of their home in its current condition was between $180,000 and $200,000 and that the value could increase to between $300,000 and $400,000 if they completed repairs to the home. All of these factors are inconsistent with a good faith belief that the home had a value of $80,000, regardless of the amount of clutter and disarray in the house. As the trier of fact, the bankruptcy judge was in the ideal position to evaluate the veracity of the Debtors as they testified at trial. The bankruptcy court's conclusion is not clearly erroneous and should be affirmed.

A discharge in bankruptcy and the associated fresh start are not fundamental rights. *Grogan v. Garner*, 498 U.S. at 286, 111 S.Ct. at 659. To the contrary, they are privileges. The opportunity for a completely unencumbered new beginning is limited to the honest but unfortunate debtor. *Id*, 498 U.S. at 286-87, 111 S.Ct. at 659, citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695,699 (1934). The cost to the debtor for an unencumbered fresh start is minimal: the debtor must honestly and accurately disclose his or her financial affairs and must cooperate with the trustee.[5] The debtor's duty of disclosure requires updating schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions.

Here, the Debtors were not truthful in their disclosures with respect to their home. They substantially undervalued their home in schedules signed under penalty of perjury to reflect no equity. The irony here is that if the Debtors had accurately disclosed the true value of their home from the outset, they may have been entitled to exempt their equity in it. For the price of accurate disclosure, they might have obtained an unencumbered fresh start and retained the equity in their home. Instead they failed to honestly and accurately disclose the value of their home or to amend their schedules when they received an offer to purchase their home for an amount which exceeded the scheduled value of their home by $70,000. They only amended their schedules to increase the value of the home after the Trustee had learned of its true value following the fire. They accompanied their belated updated disclosure with a bad faith attempt to assert a homestead exemption.

Bad faith cost the Debtors the equity in their home. Had they paid the price of honesty in their disclosures to the court, the Trustee, and their creditors, they may have earned a fresh start while retaining the equity in their home.

---

[5] See 11 U.S.C. § 521 setting forth the debtor's duties.

CONCLUSION

The bankruptcy court correctly considered the totality of circumstances and did not err in finding bad faith on the part of the Debtors. The court did not abuse its discretion in denying the Debtors' their asserted homestead exemption. Accordingly, we AFFIRM.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT