### In re Daniel and Monica EVINGER, Debtors.

### No. 3:05–bk–80324.

United States Bankruptcy Court,
W.D. Arkansas,
Harrison Division.

Nov. 6, 2006.

John Gilbert Burke, Hope, AR, for Debtors.

## ORDER

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court is the Trustee's Motion for Turnover of Unscheduled Assets, filed

on January 13, 2006, Trustee's Amended Motion for Turnover of Unscheduled Assets, filed on February 8, 2006, and Trustee's Objection to Debtors' Amended Exemptions and Motion for Turnover of Property filed on July 19, 2006. The Court held a hearing on the motions on September 28, 2006, and took the matter under advisement. For the reasons set forth below, the Court sustains the objection to debtors' amended exemptions and grants the amended motion for turnover.

## JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## HISTORY

On October 15, 2006, the debtors, Daniel and Monica Evinger, through their attorney, John Burke [Burke], filed a joint petition for relief under chapter 7 of the bankruptcy code. In their schedules filed with the bankruptcy court, the debtors listed personal property totaling $29,925.00. The debtors did not list any bank accounts or tax refunds despite having three checking accounts and then anticipated 2004 state and federal income tax refunds.

According to Ms. Evinger, when the debtors were considering bankruptcy, they did not perceive they had the finances to hire an attorney. Through friends they contacted Burke, who agreed to represent them for free. The debtors later sent Burke $300.00 for expenses. There were no face to face meetings between the debtors and Burke; the bankruptcy petition and schedules were filled out through fax, email, and telephone conversations. On October 14, Burke initially faxed only the

appropriate signature pages to the debtors. The debtors immediately signed and faxed the signature pages back to Burke before they had the opportunity to review the completed schedules. It appears the debtors were motivated by a desire to file their petition before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 took effect on October 17, 2005.

Later during the day on October 14, the same day the debtors signed the unaccompanied signature pages, Burke faxed to the debtors the full petition and schedules approximating 30 pages. After reviewing the full petition and schedules, Mr. Evinger noticed that items were missing from the schedules. Mr. Evinger testified that Burke told him that there would be exempt property and that the Evingers would not have to worry about the missing items. Mr. Evinger also testified that he asked Burke about the consequences of omitting items from the schedules, and that Burke responded that the schedules could be amended. Accordingly, Mr. Evinger testified that he did not "sweat it."

The debtors were aware on the day they signed the petition that the schedules contained errors and omissions. Despite knowing of these errors and omissions, being forewarned by Burke that amendments might be necessary, later judicious inquiry by the chapter 7 trustee, and motions for turnover and objections to exemptions, the debtors delayed several months before amending their schedules.

The first meeting of the creditors was scheduled for December 14, 2005. Because neither the debtors nor their attorney appeared, the meeting was continued to January 11, 2006. On January 11, the debtors appeared without their attorney. The trustee asked both debtors if they had read their bankruptcy petition and schedules *before* signing the signature pages.

Under oath, both debtors answered yes, even though they knew their responses were false.

During the course of the rescheduled first meeting, the trustee discovered that the Evingers' schedules were incomplete, including the fact that the debtors had not provided required and pertinent information regarding their tax refunds and bank accounts. The debtors had three undisclosed bank accounts and two unscheduled 2004 tax refunds. The debtors had not received the refunds as of the bankruptcy filing date; however, they had filed their returns before filing their petition and knew the anticipated refund amounts. By the first meeting of creditors they had actually received and spent the refunds. The trustee continued the January meeting to February 8 and filed a motion for turnover on January 13, 2006, requesting that the debtors remit their bank balances and their 2004 tax refunds. The debtors faxed the trustee copies of their bank statements, which showed that the bank accounts contained a total of $4774.75 as of the date they filed bankruptcy. On February 8, 2006, the trustee amended his motion for turnover to include these funds, restated the request for the unscheduled 2004 income tax refunds, and added a request for the 2005 tax returns when filed. The trustee also asked that the debtors not be allowed to claim the refunds and balances as exempt because the refunds and balances were not listed in the original schedules.

In June 2005, the debtors retained new counsel, Mr. Claude Jones [Jones]. The debtors testified that they sat down and went over the schedules in detail with Jones, "line by line." The debtors filed amended schedules and statements on July 18, 2006, nine months after the original petition date. The amended schedules listed a total of $44,807.75 worth of personal property, adding three checking accounts, compact discs, jewelry, firearms, a camera, a life insurance policy with no cash value, a 401(k) plan, an interest in Be Creative, Inc., 2004 income tax refunds, 2005 income tax refunds, tools, and two mowers totaling an additional $14,882.75 worth of personal property. At the same time, the debtors amended their exemptions to include all of the property added in the amended schedules.

On July 19, 2006, the trustee filed an objection to the debtors' amended exemptions and renewed his motion for turnover of property. The Court held a hearing on the trustee's motions for turnover and objection to exemptions on September 28, 2006. At the hearing, both debtors testified that it was never their intention to hide any assets; they thought Burke was filing amended schedules to include all the information Mr. Lee was requesting. Mr. Evinger testified that he never asked Burke whether he had filed amended schedules and never saw any paperwork reflecting that amended schedules had been filed. During cross-examination, Mr. Evinger revealed for the first time that he also owned an undisclosed desktop computer.

## LAW

Pursuant to 11 U.S.C. § 542(a), the debtor is required to turn over all property of the estate to the trustee. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). After establishing property of the estate, the debtor may exempt certain property from the estate either under the federal exemptions or under state or other applicable exemption laws. 11 U.S.C. § 522(b). If a party in interest objects to the debtor's claim of exemptions, the objecting party has the burden of proving the exemptions are not

properly claimed. Fed. R. Bankr.P. 4003(c).

 Although exemption claims may be amended by the debtor as a matter of course under Federal Rule of Bankruptcy Procedure 1009(a), there are two exceptions to this rule. *Ladd v. Ries (In re Ladd),* 450 F.3d 751, 755 (8th Cir.2006) (citing *Kaelin v. Bassett (In re Kaelin),* 308 F.3d 885, 889 (8th Cir.2002)). Either bad faith on the part of the debtor or prejudice to the creditors can eliminate a debtor's right to amend exemptions. *Kaelin,* 308 F.3d at 889; *Bauer v. Iannacone (In re Bauer),* 298 B.R. 353, 356 (8th Cir. BAP 2003). The question of whether a debtor has acted in bad faith is determined by examining the totality of the circumstances, *Kaelin,* 308 F.3d at 889, and must be proved by a preponderance of the evidence. *Bauer,* 298 B.R. at 356.

 A debtor who has attempted to hide an asset has acted in bad faith. *Kaelin,* 308 F.3d at 890. Under 11 U.S.C. § 521(a)(1), a debtor is required to file a schedule of assets and liabilities. Section 521(a)(3) requires the debtor to cooperate with the trustee "as necessary to enable the trustee to perform the trustee's duties...." Bankruptcy schedules require debtors to verify the disclosures contained in the schedules under penalty of perjury. "By statute, that has the force and effect of an oath." *Cepelak v. Sears (In re Sears),* 246 B.R. 341, 347 (8th Cir. BAP 2000). The debtor's duty of disclosure requires the debtor to honestly and accurately disclose assets, cooperate with the trustee, and amend the schedules as soon as practicable when the debtor knows of any inaccuracies or omissions. *Bauer,* 298 B.R. at 357; *see also* 11 U.S.C. § 521. An intentional concealment of assets may be inferred from the circumstances, including

nondisclosures that were the result of a reckless disregard for the truth of the information provided. *In re Bauer,* 291 B.R. 127, 130 (Bankr.D.Minn.2003), *aff'd,* 298 B.R. 353 (8th Cir. BAP 2003).

## DISCUSSION

There is no question that the property omitted from the Evingers' original bankruptcy schedules and added in the amended schedules comprised property of the estate when they filed their bankruptcy petition on October 15, 2005. As such, these assets were subject to turnover to the trustee unless the Evingers appropriately claimed the property as exempt.

 The trustee objected to the debtors' amended exemptions on the basis of bad faith and has the burden of establishing the debtors' bad faith by a preponderance of the evidence.[1] The Court is satisfied that the trustee has met that burden.

After failing to disclose all of their personal property in their original bankruptcy schedules, the debtors later sought to amend their schedules to both include and exempt additional assets. The debtors depend on Federal Rule of Bankruptcy Procedure 1009, which allows the schedules to be amended "at any time before the case is closed." The trustee objects to the amended exemptions on the basis of bad faith and requests commensurate turnover of the newly disclosed assets.

Here, there was evidence of bad faith on the part of the Evingers throughout the bankruptcy case. The debtors omitted $14,882.75 worth of personal property from their original schedules, which were signed by the debtors under penalty of perjury. The debtors violated their oath at the first meeting of creditors when asked whether they read their petition and schedules be-

---

1. For purposes of this opinion, the Court assumes no prejudice to creditors because the assets, if properly listed in the initial schedules, could have been entirely exempted.

fore affixing their signatures. Although the oath is simple, it is fundamental to the judicial system and transgressions dictate serious consequences. *See In re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.") The debtors signed their schedules without reviewing them. On that same day they learned the schedules were overwhelmingly incorrect but waited months to correct them, and they chose to violate their oath on that exact, and pertinent, point.

The debtors testified they thought Burke was amending their schedules to include all the information that the trustee requested. However, Mr. Evinger testified that he never asked Burke whether he had filed an amended schedule and never saw any paperwork that indicated Burke had done so.

Both debtors sought to displace responsibility on Burke, their original attorney. This is not a defense that the Court can legally or factually recognize in this instance. Although Burke was not present to defend himself, it is evident the debtors believe he may have poorly served them as clients. However, courts hold clients responsible for the actions of their attorneys all the time. *See In re Bauer,* 291 B.R. at 130 (rejecting a "blame the lawyer" defense where the debtors failed to take into account information readily available to them when completing their schedules and the attorney alleged to be at fault was not called as a witness). That is fundamental to the concept of representation in an adversarial system. If they are dissatisfied with Burke's services, the debtors have recourse to proceedings not currently before this Court. Also, there is more than sufficient evidence that the debtors knew of the omissions, failed to timely address the issue with their attorney, dissipated assets that they knew were in question, and generally conducted themselves in a manner reflecting that their bankruptcy was not a matter requiring their full attention, candor, and integrity.

No better proof exists of the debtors' reckless disregard for complete disclosure than the similar treatment afforded their new counsel. The debtors retained a new attorney, with whom they testified they went over the amended schedules "line by line." Even after a detailed investigation, Mr. Evinger revealed for the first time at trial that he owned a computer. Mr. Evinger used it to communicate with his lawyers, and it was an integral part of his home business. This item has never been listed. If it were not for this testimony, the trustee might never have discovered the computer.

The debtors have yet to be truthful in their disclosures one year after their original petition was filed. All of the property added in the amended schedules and disclosed through testimony were assets of the estate that the Evingers were required to disclose initially. The assets were plain, ordinary, and typical, and they fit well within the descriptive captions in the schedules. There was nothing so esoteric or unusual that would suggest a valid inadvertent omission obviating bad faith. The petition, schedules, and statements should have been complete "without the necessity of digging out and conducting independent examinations to get the facts." *Mertz v. Rott,* 955 F.2d 596, 598 (8th Cir.1992). The debtors had opportunities to disclose fully the assets omitted from their original schedules and have no legally cognizable defense for failing to do so. The evidence presented is sufficient for this Court to find bad faith on the part of the debtors and deny the amended exemptions.

Therefore, the debtors are ordered to amend their schedules to include the omit-

ted computer and any other undisclosed property that was owned as of the date of the bankruptcy filing and turn over such property to the trustee. The debtors are further ordered to turn over the following property of the estate identified on the debtors' amended schedules to the trustee: compact discs, a man's wedding band, a lady's wedding set, miscellaneous costume jewelry, a lady's watch, an S & W .38 pistol, a .22 rifle, a camera, 2004 state and federal income tax refunds,[2] a Yardman riding lawn mower, garden tools, a skill saw, and a push lawn mower. The debtors are also ordered to remit to the trustee $4774.75, which is the balance of their three Union Planters Bank checking accounts as of the date of their bankruptcy filing, and transfer either the stock of Be Creative, Inc., or the value of Be Creative, Inc. in the amount of $1.00, to the trustee.

## CONCLUSION

For the reasons stated, the objection to the amended exemptions is sustained, and the amended motion for turnover is granted.

IT IS SO ORDERED.

---

**2.** There is no evidence to reflect any bad faith with regard to the amendment reflecting the debtors' 2005 income tax refunds, an amount not known at the time of filing and not established until late summer of 2006.